UNITED STATES, Appellee

v

VERNAL R. NESS, Staff Sergeant, U. S. Air Force, Appellant

13 USCMA 18, 32 CMR 18

*Major Quincey W. Tucker, Jr.*, argued the cause for Appellant, Accused. With him on the brief was *Colonel Joseph E. Krysakowski*.

*Lieutenant Colonel Simpson M. Woolf* argued the cause for Appellee, United States. With him on the brief was *Colonel Merlin W. Baker*.

## Opinion of the Court

QUINN, Chief Judge:

A general court-martial convicted the accused of six offenses in violation of the Uniform Code of Military Justice and imposed a sentence which included dishonorable discharge and confinement at hard labor for seven years. The findings of guilty were approved on intermediate appellate review, but the period of confinement was successively reduced so it is now three and one-half years. The only question before us is whether the accused was prejudiced by the law officer's refusal to require the Government to disclose the identity of an informant. The question affects three of the six offenses.

In the afternoon of August 15, 1960, Major Terrell, commander of the Detachment of the Office of Special Investigations at Tachikawa Air Base, Japan, and Special Agent Platt appeared in the office of Major A. W. Scott, the air base provost marshal. The commanding officer of the base had delegated to Major Scott "general authority" to order searches and seizures. Major Terrell and Agent Platt had come to obtain authority to effect a search.[1] They gave Major Scott a "thorough briefing" on an investigation they were conducting. A "very reliable confidential informant" had reported to Agent Platt about 2:00 or 2:30 that afternoon in Tachikawa City "two caucasian males" talked to "Jimmy Arakawa," a Korean national known to the Japanese police and to Agent Platt as a black-market operator and receiver of stolen Government property. One of the caucasians was known to the informant as a "champion bowler" at the air base. The informant heard the caucasians and Arakawa discuss the sale of B–6 type aircraft amplifiers, which are expensive pieces of communication equipment. At 6:30 that evening Arakawa was to be picked up by the others in their car at an "oil station" on the Yamato-Tachikawa road near the Sunagawa police box. They were then to proceed to Tokyo to sell the amplifiers. The informant further reported that when the conversation between Arakawa and the caucasians ended, he followed the latter to an automobile in which they drove off. He described the car as a black and white Pontiac bearing license number 3 E 9055. Agent Platt knew the informant for over two years. He had found other reports submitted by him to be very reliable, and they had "resulted in numerous recoveries of government property." Accordingly, Platt checked the air base records, and ascer-

---

[1] There may be a substantial question as to the propriety of a blanket delegation of authority to order searches to a police officer such as the provost marshal. The fundamental idea behind the requirement that there be authorization to search separate from that of a police officer is that the official to whom the request is made brings "judicial" rather than a "police" attitude to the examination of the operative facts. Johnson v United States, 333 US 10, 92 L ed 436, 68 S Ct 367 (1948); cf. United States v Hedges, 11 USCMA 642, 29 CMR 458. We need not explore the issue in this case because Major Scott testified that before the actual search he notified the commanding officer who approved his action. As the law officer pointed out, he could "even find . . . that he had an authorization from the colonel himself."

tained the accused was the registered owner of the described auto. The accused worked at a bowling alley on the base. Platt decided to search the vehicle "if the transaction [described by the informant] took place." He and the detachment commander therefore went to Major Scott to obtain written authority. Major Scott issued a written authorization to search an automobile described as a "1955 Pontiac, 2 Door Sedan, Black and Creme bearing Lic. 3 E 9055." Shortly before the expected meeting between Arakawa and the caucasians, a road block was established around the prospective meeting place and on the road to Tokyo which it was anticipated the suspected car would travel. Agent Platt stationed himself in an alley way across from the oil station. About fifteen or twenty minutes before the appointed hour, Arakawa appeared. He stood around waiting. Then the auto appeared. It stopped and Arakawa entered. The car turned and proceeded on the road to Tokyo which it had been expected to take. Thereupon, Agent Platt radioed to Air Policeman Stults at one of the road block points to stop the vehicle and apprehend the occupants. Platt testified he would not have ordered the apprehension and "would have called the whole thing off" if Arakawa had not entered the vehicle, as the informer had reported he would. When the car appeared at the blocking point, it was stopped. The driver was the accused. He was informed he was "under apprehension for alleged illegal possession of government property," and he was advised of his rights under Article 31 of the Uniform Code of Military Justice, 10 USC § 831. The other caucasian passenger, identified as Airman Slack, was also taken into custody; the Japanese passenger was told "to get on out of there" since the military "couldn't apprehend him anyway." Sergeant Stults who effected the apprehension, testified that he did so on the basis of the information given to him by Agent Platt; he said if he had "developed the same information" independently, he "would have had to make the apprehension to protect" the property before it got to Tokyo.

The accused drove his own vehicle to the Office of Special Investigations parking lot. There, in the presence of Major Scott and "upon the authority received" from him, Platt proceeded to search the trunk of the accused's car and found two B–6 type aircraft amplifiers in sealed boxes. Defense counsel objected to the admission in evidence of the results of the search. He advanced two grounds: (1) that there was no probable cause to justify the search, and (2) that the commander's delegation of authority did not include the power to authorize a search of private property located on the base. Both grounds were considered by the law officer, but on this appeal only the first is in issue.

During an out-of-court hearing on the defense objection, Agent Platt was questioned about the informant. His testimony in pertinent part is as follows:

"Q [Defense Counsel]. Who was this informant?

"A. I'm sorry, sir, the OSI regulations prohibit—it's classified and they prohibit the disclosure of this information.

"Q. Could you tell us anything about him?

"A. Sir, it depends upon your question.

"Q. Well, how many times has he informed before?

"A. This man has been known as an informant to me for over two years.

"Q. Has the information been reliable?

"A. Yes, sir, it has.

"Q. Was anyone else present at the time this informant gave you this information?

"A. No, sir, there was not.

"Q. What is the informant's occupation?

"A. I'm sorry, sir, that information is classified and I am not at liberty to disclose it.

"Q. Outside of your word, is there any way that we can know that this conversation or information occurred?

**21**

• • • • •

"IDC: May it please the court, when a person takes the stand he puts his character into issue and one of the things that he puts into issue is the testimony that he testifies to, the belief of it. Now, he's testified to an informant being there, telling him something and we have admitted it, that the conversation occurred, but not necessarily the truth of the conversation. But one of the issues we feel that we're entitled to is whether or not the conversation occurred; and the other person to it, who could shed light on whether it did or didn't, as to the credibility of this witness, is not available to us.

• • • • •

"Q [Individual Defense Counsel]. Could you tell us whether this informant is American or Japanese?

"A. I'm sorry, sir, that information is classified and I'm not at liberty to disclose it.

• • • • •

"IDC: You see, that still doesn't change the fact that there had been no informant whatsoever. That if they had found the car and these items had been present, that would just buttress their story. The fact that there was someone telling them —We question this on the honest credibility of it.

"TC: The naked assertion that this credibility is attacked is not enough. We must be reasonable.

"IDC: I'm not attacking it now. We'd just like the opportunity.

"LO: You have the opportunity.

"IDC: I can't get the name of the informant. I'd like to ask one other question."

Later in the course of the trial, defense counsel asked Agent Platt whether the informant was "the same person . . . in the car that you saw." Platt answered that he was "not at liberty to disclose that information." Arguing the probable cause ground of his objection, defense counsel said:

". . . First, the evidence did not, the defense contends, establish rea-

sonable grounds to believe that the car should be searched. The testimony so far has been—has involved an informant about whom we can find out very little, as far as his reliability. The fact that he had been reliable in other occasions does not necessarily mean he was reliable in this one, and in answer to the question of whether he was, in fact, the man in the automobile, we can't find out, which would be very important to know. The defense contends that there has to be a decision made prior to any search of the car or apprehension of the person, that there is reasonable grounds to believe that the search or the apprehension should be made. While it may be true that what is found later might have some tendency to strengthen what some person says, it certainly cannot be used to establish reasonable basis for a search. This is the state of mind of the individual authorizing it and is what he knows at that time and not what he finds out later. So based on what information he can testify to as to what they did know, they know that there was an allegation made and they know that a man got into the automobile that had been described. They know the type of man that got in there; we don't. I might add, they say they know; we don't know if they did know. We can't find out anything."

Trial counsel contended the search was justified on several grounds, including the fact that it was incidental to a lawful arrest. However, the law officer ruled that he would not accept "any . . . basis" for the search but "the authorization of Major Scott, as delegated to him by the Base Commander." Whether or not this restrictive ruling was correct need not detain us. The crucial element in a search question is the existence of probable cause. Without probable cause an arrest without a warrant is invalid and necessarily a search conducted as an incident to the arrest is also invalid. Similarly, a search based on a warrant is invalid if probable cause does not appear in the facts presented to the officer issuing

the warrant. See Jones v United States, 362 US 257, 4 L ed 2d 697, 80 S Ct 725 (1960); Johnson v United States, 333 US 10, 92 L ed 436, 68 S Ct 367 (1948); United States v Brown, 10 USCMA 482, 28 CMR 48.

Probable cause to search exists if the facts and circumstances justify a prudent man in concluding that an offense has been or is being committed. Henry v United States, 361 US 98, 4 L ed 2d 134, 80 S Ct 168 (1959). Knowledge of the operative facts and circumstances need not be based on the direct, personal observations of the police officer applying for authority to search. It is sufficient if he acts on the report of a reliable informant which is supported by corroborating circumstances. In other words, "hearsay" may be the basis for a warrant of arrest. Jones v United States, supra. On this basis there was ample cause here to justify the search. Draper v United States, 358 US 307, 3 L ed 2d 327, 79 S Ct 329 (1959). Here, as in the *Draper* case, a police officer received information from an informant of proven reliability. Here also, as in *Draper,* he "personally verified every facet of the information given him" by the informant, except whether the accused had the contraband property with him. With every other bit of the informant's information personally verified, the officer "had 'reasonable grounds' to believe that the remaining unverified bit . . . [*i. e.,* that the accused had possession of the property] was likewise true." United States v Draper, supra, page 313.

In reaching our conclusion that probable cause was present, we have not overlooked the fact that Major Scott's authorization was obtained *before* corroboration of all the details of the informant's report. However, it clearly appears that Major Scott and Agent Platt contemplated a search only after verification of the essentials of the report. It will be recalled that Platt testified he "would have called the whole thing off," if Arakawa, the known black marketeer, had not entered the accused's car, as the informant reported he would. Moreover, the written authorization to search described the location of the car "as the OSI Parking Lot." Since the vehicle was not then in custody of the Office of Special Investigations, it is plain that Major Scott expected verification of the information on which he issued the authorization *before* the search was initiated. In any event, he knew the informant's report had been proven accurate and he was present at the search. Consequently, if the authority to search was merely inchoate at issuance, it was full and unconditional before the search was actually carried out. The search, therefore, was indisputably valid on its face.

The *prima facie* validity of the search does not furnish a complete answer to the accused's challenge. He contends he had a right to know the identity of the informant. As his appellate counsel put it, the information was necessary to enable the defense to ascertain whether Agent Platt merely created "the information and the necessary probable cause out of thin air." To meet this contention, the Government asks us to adopt the rule, which obtains in some states, to the effect that if the facts presented to the magistrate for a warrant show the existence of probable cause, the validity of the authorized search cannot be attacked on the ground that the facts presented to the magistrate are untrue. See Annotation, 5 ALR 2d 394. The Court of Appeals, however, has indicated that the rule urged upon us has no application in the Federal courts. In King v United States, 282 F2d 398 (CA 4th Cir) (1960), footnote 4, it said:

"Although the majority, perhaps, of state cases have held that the aggrieved person cannot challenge the truthfulness of the facts alleged by the affiant, Smith v State, 1948, 191 Md 329, 6 A 2d 287, 5 ALR 2d 386, and Annotation, 5 ALR 2d 394, the rule in the federal courts is otherwise, and false facts given by the affiant will vitiate the warrant and search. Steele v United States (No. 1), 1925, 267 US 498, 45 S Ct 414, 69 L Ed 757; United States v Goodwin, DC SD Cal 1924, 1 F2d 36; United States v Boscarino, DC WD NY 1927, 21 F 2d 575; Atlanta Enterprises v

Crawford, DC ND Ga 1927, 22 F 2d 834; United States v Napela, DC ND NY 1928, 28 F 2d 898; United States v Nagle, DC ND NY 1929, 34 F 2d 952; United States v Henderson, DC DC 1954, 17 FRD 1; United States v Bell, DC DC 1955, 17 FRD 13; Lerner v United States, DC Mun App 1959, 151 A 2d 184. In a case like the present one, it would be difficult for the truthfulness of the facts in the affidavit to be challenged as the affiant is unknown."

In Jones v United States, supra, the United States Supreme Court had before it the sufficiency of the showing of probable cause upon which a search warrant was issued. The accused challenged the issuance of the warrant because it was based upon an informant's report to a police officer and he did not disclose the identity of the informant, or swear to the results of his own investigation of the informant's report. The court held that the hearsay report of the undisclosed informant was sufficient to show probable cause for a warrant but it pointed out that the identity of the informant "might have been relevant" if it were contended that the officer "had misrepresented to the Commissioner his basis for seeking a warrant." It is on this point of relevance that the accused relies. He contends the denial of his request for disclosure of the identity of the informer prejudiced him in his attempt to show that Agent Platt misrepresented the facts to Major Scott.

As a general rule, the Government may withhold the identity of a person who supplies it with information of a violation of the law by another. Scher v United States, 305 US 251, 83 L ed 151, 59 S Ct 174 (1938). The privilege, however, is not absolute. It "must give way" when the identity of the informant "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." Roviaro v United States, 353 US 53, 60, 1 L ed 2d 639, 77 S Ct 623 (1957). Necessarily, the privilege of nondisclosure must be balanced against the necessity for disclosure. The particular facts of each case, "including

the possible significance of the informer's testimony," must be considered. United States v Roviaro, supra, page 62. Disclosure was required in this case, say appellate defense counsel, because only the informant could rebut Agent Platt's statement of the purported facts. The argument would have substance if the truthfulness of Platt's statement was not corroborated by the uncontested events of the accused's meeting with Arakawa. United States v Roviaro, supra, page 63. We have already noted that every important detail but one of the informant's report was verified before the search. It is inconceivable that Platt could have created "out of thin air" and related to Major Scott the story of the proposed meeting between the accused and Arakawa at a specified place *before* that meeting took place; manifestly, he had information about the scheme *before* the principals embarked upon its execution. Moreover, while not referred to in trial counsel's argument on the defense objection, there was other evidence that could be considered by the law officer in determining the necessity for disclosure. Earlier, Sergeant Anyan had testified that he and the accused had discussed selling B-6 type amplifiers. Neither knew a "contact for downtown," so they enlisted Airman Slack in the scheme. He was to "try to find the buyer." Slack later indicated he had found a "man that would buy [the amplifiers.]" Slack was one of the passengers in the vehicle when it was stopped. This testimony dovetails neatly with informant's report of a discussion between Arakawa, a known black marketeer, and two caucasians about the sale of B-6 type amplifiers. It is quite clear, therefore, that Agent Platt had not concocted from his own imagination the facts which resulted in issuance of the authority to search. In the light of this evidence, there was no reasonable likelihood that disclosure of the informant's identity would enable the defense to obtain evidence that would cast doubt upon truthfulness of the facts supplied by Agent Platt. We conclude, therefore, that as far as the question of probable cause is concerned,

24

the accused was not prejudiced by non-disclosure of the identity of the informant.

Finally, the accused suggests that the informer was "an active participant" in the transaction. We are asked to infer from the fact of participation that the informer had some other information of value to the defense. Since we do not know the identity of the informant, we do not, of course, know whether he had any part in the affair. Apparently, the suggestion is based on Agent Platt's refusal to say whether the Japanese in the car, Arakawa, was the informer. If we accept the suggestion, it would strongly militate against the accused's claim of prejudice. If Arakawa was the informer, the accused knew his exact role in the matter; he admitted as much in a pretrial statement; consequently, even if it was error to refuse to reveal the informant's name, the error could not prejudice the accused. Sorrentino v United States, 163 F2d 627 (CA 9th Cir) (1947), cited with approval in United States v Roviaro, supra. In any event, assuming the accused was entitled to know the name of Agent Platt's informant for some purpose other than the attack on Platt's showing of probable cause, it compellingly appears he was accorded full opportunity to raise the point. The law officer specifically indicated he wanted "to make it clear that . . . [he was] not foreclosing on any further inquiry" into the identity of the informant if it was based on any ground other than the question of probable cause; if there are any such different grounds, he said he would "certainly entertain them." Defense counsel did not assert any other basis for disclosure.

Participation in the commission of an offense by an informer may be important to the accused because the informer might have suggested the offense and induced the accused to commit it. If the accused knew that person was an informer, he might have the defense of entrapment; or the informer might otherwise be able to give an innocent explanation for the accused's part in the transaction,

United States v Roviaro, supra; Gilmore v United States, 256 F2d 565 (CA 5th Cir) (1958); see also United States v French, 10 USCMA 171, 27 CMR 245. Here, however, Sergeant Anyan's testimony, which was uncontradicted and unimpeached, and the accused's pretrial statement which was admitted in evidence, compellingly establish the absence of any basis of entrapment and any basis for a claim of innocent involvement in the commission of the offense. Consequently, even if the informant here was Arakawa, the Government's disclosure of that fact would not, and could not, have aided the defense. The record of trial strongly indicates the accused had no other valid reason for disregarding the Government's privilege. The law officer's ruling, therefore, was correct.

The decision of the board of review is affirmed.

Judge KILDAY concurs.

FERGUSON, Judge (dissenting):

I dissent.

Regretfully, I must disassociate myself from the rationale of the principal opinion for, as I analyze its development, it approves the denial to the accused of access to the identity of Agent Platt's informant by the simple process of according credibility to Platt's story. In view of the fact that the only manner by which Platt's testimony could be attacked was by disclosure of the informant's name, I am inclined to conclude that any balancing of the Government's interest in protecting the source of its information against the accused's entitlement to prepare his defense is overcome in the latter's favor.

The foundation of the Chief Judge's development of the situation before us is the preliminary conclusion that the search of Sergeant Ness' automobile can be justified only as one made incident to a lawful arrest or as one authorized by Colonel Bland, accused's commanding officer. I unhesitatingly join in this portion of his opinion, for I am of the view that there can be no lawful delegation of the authority to order a search and seizure. The power to authorize such acts is purely judicial

**25**

and must, therefore, be personally exercised by the commander, the Manual for Courts-Martial, United States, 1951, paragraph 152, to the contrary notwithstanding. United States v Allen, 5 USCMA 626, 18 CMR 250; cf. United States v Doyle, 1 USCMA 545, 4 CMR 137. As was stated in Johnson v United States, 333 US 10, 92 L ed 436, 68 S Ct 367 (1948), at page 13:

"The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers. . . . When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent."

Having concluded that the search may be regarded either as being incident to an arrest or authorized by the commanding officer, the Chief Judge next opines that probable cause must be shown in either instance. Again, I am in agreement with his adherence to the principle we so clearly enunciated in United States v Brown, 10 USCMA 482, 28 CMR 48, and I do not dispute the proposition that this necessary predicate for authority to effect a lawful arrest or a lawful search may be found in hearsay declarations to a police officer by a reliable informant. Draper v United States, 358 US 307, 3 L ed 2d 327, 79 S Ct 329 (1959); Jones v United States, 362 US 257, 4 L ed 2d 697, 80 S Ct 725 (1960).

The point at which I part company with my brothers is in their ultimate conclusion that the informant's identity need not have been disclosed because, insofar as possible, Agent Platt later established the authenticity of his communication and ordered accused's apprehension only after so satisfying himself. This simply puts the cart before the horse and misapprehends the dilemma of the accused at the trial.

First, I believe it quite clear that no probable cause to arrest is shown by the departure from an air base of a properly licensed and operated automobile, which is later entered by a known black marketeer and proceeds in an orderly fashion on the public highway toward Tokyo. Indeed, such facts can hardly be said to arouse more than a faint suspicion. In no event could they amount to circumstances justifying a prudent man in concluding that an offense has been or is being committed. Henry v United States, 361 US 98, 4 L ed 2d 134, 80 S Ct 168 (1959); United States v Brown, supra. Yet, these are the only events which Agent Platt observed and, to establish probable cause, we must turn again to the informant's tale which prophesied the foregoing matters and added the essential element that the accused's car contained the stolen items. In short, Agent Platt's direct observation of the recited occurrences is valuable only in that it corroborated the information which he had received and upon which he was unwilling to act without further proof of authenticity.

That brings us precisely to the point which the defense counsel was making. He desired the identity of the informant in order to be able to contest Agent Platt's credibility. He suggested, and I agree, that it was impossible to tell whether the search was actually based on nothing more than seeing Arakawa enter accused's car, with the agent and the other law enforcement personnel later concocting the story of the informant in order to justify the search. And the only way to investigate and possibly to disprove the agent's story was by ascertaining the informant's identity, producing him as a witness, and having him testify to that effect. True, he may not have

done so, but the defense was entitled on cross-examination so to develop a lead to other evidence. Alford v United States, 282 US 687, 75 L ed 624, 51 S Ct 218 (1931). "The desirability of calling John Doe as a witness, or at least interviewing him in preparation for trial, was a matter for the accused rather than the Government to decide." Roviaro v United States, 353 US 53, 64, 1 L ed 2d 639, 647, 77 S Ct 623, 629 (1957).

Indeed, the Supreme Court noted in the *Roviaro* case, at page 60:

". . . Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action. *Most of the federal cases involving this limitation on the scope of the informer's privilege have arisen where the legality of a search without a warrant is in issue and the communications of an informer are claimed to establish probable cause. In these cases the Government has been required to disclose the identity of the informant unless there was sufficient evidence apart from his confidential communication.*" [Emphasis supplied.]

And in Scher v United States, 305 US 251, 83 L ed 151, 59 S Ct 174 (1938), the same Court remarked, at page 254:

"Moreover, as often pointed out, public policy forbids disclosure of an informer's identity *unless essential to the defense as, for example, where this turns upon an officer's good faith.*" [Emphasis supplied.]

In United States v Keown, 19 F Supp 639 (WD Ky) (1937), involving facts surprisingly similar to these before us, Judge Hamilton concluded it was prejudicial error to refuse to disclose the identity of an informant who furnished confidential information leading in part to a search of accused's vehicle. There, the defendant was known to the police

officer as a bootlegger. The officer received confidential information that Keown would transport, on a date certain and in a described automobile, illicit whiskey. Defendant's car, heavily laden, was observed and pursued on the proper day. It was compelled to stop, and a search disclosed the presence of 165 gallons of whiskey. The officer refused to disclose the name of his informant. In granting a motion for new trial, it was stated, at page 646:

"When the government calls a witness whose testimony is based in part on that of an informer, *it subjects the witness to cross-examination and the informer to whatever peril may arise out of such cross-examination. It is a sound rule to keep secret information furnished to the state of violations of its laws, but this commendable public policy must yield to a higher, or at least an equal, right accorded to an accused to have a court investigate the facts material to his offense in a criminal prosecution, and sometimes the departments of government will be put to a choice of either foregoing a criminal prosecution or disclosing the source of material information necessary to the conduct of orderly judicial procedure.*" [Emphasis supplied.]

See also Wilson v United States, 59 F2d 390 (CA 3d Cir) (1932); United States v Li Fat Tong, 152 F2d 650 (CA 2d Cir) (1945); and Costello v United States, 298 F2d 99 (CA 9th Cir) (1962).

Nor do the authorities upon which reliance is placed in the principal opinion support the proposition that an informant's identity need not be disclosed when the fact of his existence is disputed, if the proof otherwise establishes that part of his purported information is accurate. Draper v United States, supra, and Jones v United States, supra, involved the question whether probable cause to arrest or to issue a search warrant could be based upon hearsay information supplied by a reliable informant. In both instances, the Court concluded that such was sufficient to establish probable cause. In

**27**

neither case was any question concerning the informer privilege raised or discussed. Indeed, in *Draper,* supra, the informer was dead, and his name was repeatedly spread upon the record. And in *Jones,* supra, while the name was not disclosed, there is no mention in the opinion of any attempt by the defense to secure the identity or to argue that accused had need of this information. The Court simply does not discuss the point. In short, the cases do not permit the privilege to be upheld because we believe it "inconceivable that Platt could have created 'out of thin air' and related to Major Scott the story of the proposed meeting." As indicated above, they support the opposite conclusion, *i.e.,* that every accused is entitled to the opportunity, whether or not it subsequently proves successful, to show that the case against him was ephemeral.

"Though the police are honest and their aims worthy, history shows they are not appropriate guardians of the privacy which the Fourth Amendment protects." Jones v United States, supra, dissenting opinion of Mr. Justice Douglas, at page 273. I fear this Court's decision today confides that trust to them, for it indulges in an irrebuttable presumption of their credibility, cleverly erected upon *post hoc* considerations which bear not at all upon the question whether there was ever an informer in this case.

I would reverse the decision of the board of review and return the record of trial to The Judge Advocate General of the Air Force, with directions either to hold a rehearing on the affected charges or to reassess the sentence on the remaining specifications of larceny.