UNITED STATES, Appellee

v

JACK LEE STAGGS, Seaman, U. S. Naval Reserve, Appellant

No. 27,497

June 14, 1974

*Lieutenant H. Neil Broder,* JAGC, USNR, argued the cause for Appellant, Accused.

*Lieutenant Thomas L. Earp,* JAGC, USNR, argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel G. L. Bailey,* USMC, and *Lieutenant Colonel L. K. O'Drudy, Jr.,* USMC.

## OPINION OF THE COURT

DUNCAN, Chief Judge:

A grant of review was made in this case in order to consider whether the search warrant issued by a staff judge advocate was invalid because the issuing officer was not the equivalent of a neutral and detached magistrate.

The facts are not really in dispute. On the naval installation in question, Naval Air Station, Whidbey Island, Oak Harbor, Washington, an instruction[1] authorized the station judge advocate to authorize searches upon probable cause as a delegation of the commander's authority in this regard. On May 23, 1972, Naval Investigative Service Special Agent Stovall sought authorization from the station judge advocate to search the appellant's person and his dwelling place in base housing. Stovall's affidavit, which was in fact dictated by the station judge advocate himself on the basis of information supplied by Stovall, is set out in full in the margin. Basically, it states that one Marrine, a Marine corporal who had been arrested by customs authorities at Blaine, Washington, for possession of marihuana, made a statement under oath that on May 18, 1972, he had purchased the marihuana from a woman named Chris, believed to be a sailor's wife, at a residence he identified, which was located on Naval Air Station, Whidbey Island. Stovall further indicated that investigation of the base locator system disclosed the residence was occupied by the appellant and his wife, Chris. Stovall's affidavit also relates that a resident agent of Naval Investigative Service Agency, Whidbey Island, during a previous investigation had verified through "normal investigative procedures" appellant's identity, his wife's identity, and their address, on the basis of "reliable information" furnished by two other named individuals who identified the appellant's wife as "Chris." They also provided other "reliable" information "concerning numerous dangerous drug and narcotics users in the Whidbey Island area including . . . [one of the informant's] purchase from, use with,

and possession by Jack STAGGS at his address in Victory housing, and also implicating Chris STAGGS as being a possessor and user of marijuana." The affiant further states that Marrine "has agreed to effect a controlled purchase of marijuana from Jack STAGGS at the residence at 666 Brant Street, Oak Harbor, Washington on this date."

At trial, the station judge advocate admitted it would be fair to say that there was not enough information or evidence available to constitute probable cause for the search at the time he spoke with Stovall. Nevertheless, on the basis of the affidavit, a "COMMAND AUTHORIZATION FOR SEARCH AND SEIZURE," dated May 23, 1972, also set out in the margin, was issued by the station judge advocate for the search of Staggs, his residence, and any automobiles belonging to him, for "[m]arijuana and any controlled drug or substance and any special marked currency of the United States." The authorization was subject to "subsequent corroboration that Michael T. Marrine, CPL, USMC, will effect a controlled purchase of marijuana from the said Jack Lee Staggs, SN, USN, D89-76-11, on 23 May 1972, under the direction of Agents Carl Merritt and Harvey Stovall, NISO." The record indicates that it was Stovall who initially proposed that Marrine would be willing to effect a controlled purchase from the appellant, and that the station judge advocate believed such "corroboration" was needed "to round out the probable cause."

The written warrant was issued around 3:30 p.m., and the station judge advocate received a telephone call about 6:00 p.m. from Stovall who related that Marrine had made a controlled purchase of marihuana from the appellant in the house in question; that Marrine stated the appellant "told him that he expected additional marijuana to be there that night about 9 o'clock" and that he should return then if he "was interested in buying more." When Stovall asked the station judge advocate at this time whether the search warrant should be immediately executed inasmuch as its condition of a controlled purchase had been fulfilled, or whether the investiga-

---

[1] Naval Air Station, Whidbey Island, Instruction 5522.1D (1971).

tors should wait until another purchase could be made by Marrine after 9 o'clock, the station judge advocate "left that up to them and told them that they could wait and attempt to make another purchase but whatever they did it must be executed before midnight." The station judge advocate considered that the oral authorization over the telephone was sufficient authority to conduct a search, and in any event Stovall had the written warrant, "so taking the two together he had the authorization."

Marrine made a second controlled purchase after 9 o'clock, and thereafter Stovall and other NIS agents, without again contacting the station judge advocate to advise him of the circumstances of the second controlled purchase, went to appellant's house and apprehended him and searched the premises, finding a large quantity of marihuana and 71 tablets of amphetamines, which were introduced in evidence at this trial over defense objection they were seized in an unlawful search.

Additional relevant facts are that the station judge advocate was routinely approached on search matters by investigative authorities even though the instruction delegating him the power to authorize searches declared that "[o]rdinarily" the commanding officer will be "the officer responsible for authorizing searches of persons and property." Moreover, the station judge advocate had previously talked with an accused in another case who traded information "about the drug traffic in the area" for clemency, giving evidence against the appellant herein, whereupon the station judge advocate "contacted Naval Investigative Service sometime after that and on behalf of the command asked them to conduct an investigation into STAGGS['] activities." That investigation of the appellant conducted some 5 months earlier produced inconclusive results. When approached on May 23, 1972, with a request for authorization to search the appellant and his residence, the station judge advocate remembered the appellant's name "immediately." Lastly, after the arrest of Staggs, the station judge advocate was heard to say "we'd been after him" for some time.

■ At the outset, it is helpful to focus on two points which are not at issue in this case. First, the fact that the officer who issues the warrant was also the station judge advocate need not detain us, for his authority in this matter seems to us to have been properly delegated from the appropriate commanding officer, paragraph 152, Manual for Courts-Martial, United States, 1969 (Rev.), and there appears to be no inherent conflict of interest between serving as a station judge advocate and exercising the authority to order searches on probable cause on behalf of a commanding officer. If a commanding officer with responsibility "for the maintenance of order and discipline within his command" is not *per se* disqualified from authorizing searches upon probable cause, Wallis v O'Kier, — F2d — (10th Cir Feb. 19, 1974), neither is his staff judge advocate. Next, we are not concerned with the adequacy of the Stovall affidavit and the station judge advocate's written authorization to search. Rather, our primary focus is upon the entire participation of this particular station judge advocate in authorizing the search.

■ Whether an authorization to search is made by a commanding officer, or as in this case by his delegate, the act of authorizing a search on the basis of probable cause is a " 'judicial function.' " United States v Drew, 15 USCMA 449, 454, 35 CMR 421, 425 (1965). "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." Katz v United States, 389 US 347, 357 (1967) (footnotes omitted). One well-recognized exception to the requirement that a magistrate or judicial officer must authorize certain searches is found in the military practice permitting commanding officers or their delegates to authorize searches upon probable cause. Paragraph 152, MCM. Nevertheless, we have held that a commanding officer "stands in the same position as a Federal magistrate issuing a search warrant." United States v Sam, 22 USCMA 124, 127, 46 CMR 124, 127 (1973). Consequently, the military officer's decision to authorize a search on probable cause must be made with "a

magistrate's neutrality and detachment." *Id.* Or, to put it in the words of the Manual in describing the necessary quality of an officer delegated the power to authorize searches, the magistrate function in the military must be exercised by an "impartial person." Paragraph 152, MCM. The search authority must be exercised with "a 'judicial' rather than a 'police' attitude to the examination of the operative facts." United States v Drew, supra at 454, 35 CMR at 426.

■ Assuming that the station judge advocate was acting within the sphere of his official duties in ordering an investigation into suspected activity by the accused, such activity standing alone does not amount to participation in the process of investigation divesting him of lawful authority to order a search upon probable cause. Our review, however, must consider the fact that he ordered the first investigation into the accused's suspected drug activity. Furthermore, at trial, the station judge advocate admitted that the appellant's name "came back immediately" when the request for authorization to search was presented to him. He also admitted that "we'd been after him [the appellant] for that long [December to May]." Such statement while providing a suggestion of satisfaction with the predicament of the accused, may also be only connotative of the duration of the Government's suspicion of the accused.

The key matter in controversy is the prospective authority to search. Our result in the instant case does not demand that we decide whether probable cause existed for the search before or after the condition of the authorization (controlled purchase) was met.

Marrine's first purchase of marihuana was made on May 18, 1972. The station judge advocate's stated belief was that at the time of application for authority to search the facts of the purchase were stale. From the purchase made on May 18, it can reasonably be inferred that there was marihuana present at appellant's home. However, according to the testimony of the station judge advocate, he did not believe that probability continued and existed on May 23, when the authority to search was requested.

Therefore, according to the station judge advocate himself, there was no probable cause to search based on Marrine's first purchase. Search warrants are directed to present crimes rather than those that may arise. Although the station judge advocate properly could consider the full range of information he had concerning Staggs and his premises, the probable cause to search arose only after the first controlled purchase. Moreover, it would have demonstrated probable cause independent of Marrine's first purchase.

■ What the fact pattern displays, then, is an initial failure of probable cause and the person acting as a magistrate participating in designing a plan to produce a probable cause situation. Joining this activity, his assistance to the agent in preparing the affidavit, and the stated history of the investigation and comments concerning appellant, we do not believe that the search in this case was authorized by a person of the requisite impartiality, neutrality, and detachment.

We emphasize that our conclusion that the search authorization in this case was invalid is based on the peculiar facts before us. We are well aware that a commander's responsibility for the maintenance of order and discipline in his command requires that he direct and sometimes participate in investigations into criminal activities. He is also the individual empowered to issue search authorizations on probable cause. Nothing in this decision is intended to invalidate this long-standing practice, as we are certain that, in the ordinary course of events, a commander is able to separate his responsibilities and maintain the requisite judicial attitude toward making determinations of the existence of probable cause. But, in this case, the evidence indicates that the station judge advocate departed from his normal role and became an active participant in gathering evidence against the accused. That participation was inconsistent with his duty to remain an impartial and detached magistrate.

We have determined that probable cause, according to the station judge advocate's fact determination, did not arise until after the controlled purchase.

This is not a holding that all conditional authority to search is a ground for invalidating the search. *Compare* United States v Allende, 486 F2d 1351 (9th Cir 1973), *with* United States ex. rel. Beal v Skaff, 418 F2d 430 (7th Cir 1969).

The decision of the U.S. Navy Court of Military Review is reversed. The findings of guilty of specifications 1 and 2 of the charge and the sentence are set aside. The remaining findings of guilty are affirmed. The record of trial is returned to the Judge Advocate General of the Navy. A rehearing may be authorized.

Senior Judge FERGUSON concurs.

QUINN, Judge (dissenting):

The principal opinion concedes that the evidence of controlled purchases provided more than sufficient cause to search the accused's premises. In addition, I have no doubt as to the validity of the issuance of the authorization to search, subject to the condition that the search not be carried out unless and until corroborated by a predicted course of conduct by the suspect in the immediate future. As we pointed out in United States v Ness, 13 USCMA 18, 23, 32 CMR 18, 23 (1962):

> [I]f the authority to search was merely inchoate at issuance, it was full and unconditional before the search was actually carried out.

See also Draper v United States, 358 US 307 (1959).

Turning to the necessity for "detached neutrality" on the part of the staff judge advocate, I am not convinced, as the majority are, that his comment "we'd been after him" demonstrates his identification with the investigative and prosecutive agencies. Certainly, the staff judge advocate demonstrated his independence of judgment and his separateness from these other agencies of the Government when he rejected the initial request for authorization to search. The majority perceive his demand for additional evidence of probable cause as participation "in designing a plan to produce a probable cause situation;" I see it as proof of his independence of the investigatory arm and of his insistence that it meet the standards prescribed by law. The compelling nature of the additional evidence he demanded demonstrates he was not a rubber stamp for the agents or predisposed to accede to their view that the evidence of probable cause they first presented to him was sufficient. To me, these circumstances have a meaning that is entirely different from that attributed to them by the majority.

In the civilian community, the magistrate authorized to issue a warrant is as much a part of the Government as the criminal investigator and the prosecuting attorney; in the military community, the staff judge advocate is in the same position. Both the civilian magistrate and the staff judge advocate may know of previous aborted proceedings against a particular suspect. Such knowledge alone would not disqualify them from acting on a new application for a warrant. Considering the staff judge advocate's knowledge of the previous proceedings against the accused and bearing in mind his association with the other agencies as part of the Government, I construe his use of the word "we" as meaning the Government, in the person of all the agencies that had previously been involved with the accused; and I construe his demand for more evidence as proof of his impartiality and independence. I conclude, therefore, that the staff judge advocate was not disqualified from issuing the authorization to search, and I would affirm the decision of the Court of Military Review.

APPENDIX I

AFFIDAVIT

Personally appeared before me, the undersigned officer on the 23rd day of May, 1972 the affiant, Harry J. STOVALL, special agent Naval Investigative Service Office, resident agency, Whidbey Island, Washington and deposes and states under oath as follows:

That Michael T. MARRINE, CPL, USMC, was arrested at Blaine, Washington on 20 May 1972 by U.S. Customs Agents at which time he was in possession of approximately 2 ounces of marijuana. Said substance has been field tested by customs agents and proven to be marijuana. Thereafter, MARRINE submitted a statement under oath in

which he related that he purchased two ounces of what he believed to be marijuana, at a cost of $18.00 from a sailor's wife whose name is Chris. MARRINE further indicated that he did not know the last name of the woman and had never met her sailor husband. Subsequently, at the request of Agent Carl J. MERRITT, NISO, Corporal MARRINE pointed out a residence located in Victory housing on the confines of the Naval Air Station, Whidbey Island, the address of which is 666 D Brant Street as being the location whereat he had purchased the marijuana on the 18th of May, 1972.

It was verified through the Base Locator system that 666 Brant Street, Oak Harbor, Washington is occupied by one Jack B. STAGGS, SN, USN, D98-76-11 and his wife, Chris. STAGGS identity, address, and wife's name had been previously verified during the course of an investigation, involving narcotics of which he was the subject, previously conducted by the resident agency of NISO, Whidbey Island. Reliable information had been furnished to the affiant and his agency previously concerning the possession, use and sale of marijuana by Carol J. WAIT, residing at West 2503 Upton, Spokane, Washington on 6 December, 1971, in which he implicated her husband Lowell Scott WAIT in that use, possession and sale and she further identified in her statement Mrs. STAGGS as being named Chris. Subsequent to receipt of the information from Carol J. WAIT, her husband, Lowell Scott WAIT was apprehended while an unauthorized absentee and found to have been in possession of drug paraphernalia at that time. Lowell Scott WAIT subsequently provided additional information which proved to be reliable concerning numerous dangerous drug and narcotics users in the Whidbey Island area including his purchase from, use with, and possession by Jack STAGGS at his address in Victory housing, and also implicating Chris STAGGS as being a possessor and user of marijuana. The information by both Carol J. WAIT and Lowell Scott WAIT was verified through normal investigative procedures. Lowell Scott WAIT was subsequently administratively separated from the United States Navy on the basis of drug abuse.

Your affiant further states that Michael T. MARRINE has agreed to effect a controlled purchase of marijuana from Jack STAGGS at the residence at 666 Brant Street, Oak Harbor, Washington on this date, 23 May 1972 under the direction of Carl J. MERRITT, and Harry J. STOVALL, your affiant, resident agents, Naval Investigative Service, Whidbey Island, Washington.

23 May 1972                    /signed/
    Date                    Harry J. STOVALL

I Duane C. BUCHHOLZ, the undersigned officer, do hereby certify that the foregoing instrument was subscribed and sworn to before me this *23rd* day of May, 1972, by Harry J. STOVALL, who is known to me to be a resident agent with the Naval Investigative Service, Whidbey Island, Washington. And I do further certify that I am at the date of this certificate a commissioned officer of the grade, branch of service, and organization stated below in the active service of the United States Armed Forces, that by statute no seal is required on this certificate, and same is executed in my capacity as Station Judge Advocate, authorized to order searches in accordance with NASWHIDBEY INST. 5522. 1D of 16 April 1971.

/signed/
Duane C. BUCHHOLZ,
    JAGC, LCDR
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, U.S. Navy
Station Judge Advocate
NAS Whidbey Island
Oak Harbor, Washington 98277

APPENDIX II

COMMAND AUTHORIZATION FOR SEARCH AND SEIZURE

Date 23 May 1972

From: Commanding Officer, Naval Air Station, Whidbey Island
To:    Special Agent(s) Carl J. Merritt and Harry J. STOVALL Naval Investigative Service Resident Agency, Whidbey Island, Wa.

Subj: Jack Lee STAGGS, SN, USN, D89-76-11: Authorization for search and seizure in the case of

1. In connection with an investigation of

the offense(s) of the suspected sale and possession of marijuana, you are hereby authorized to search the person of STAGGS, his residence, located at 666-D Brandt Street, Navy Housing, Oak Harbor, Washington and any automobiles located thereat which belong to STAGGS, which is/are under my jurisdiction.

2. Pursuant to this authorization to search, you are further authorized to seize the following items: Marijuana and any controlled drug or substance and any special marked currency of the United States. Subject, however, to subsequent corroboration that Michael T. Marrine, CPL, USMC, will effect a controlled purchase of marijuana from the said Jack Lee Staggs, SN, USN, D89-76-11, on 23 May 1972, under the direction of Agents Carl Merritt and Harry Stovall, NISO.

3. You will provide a signed receipt to this command containing a full description of each and every item seized.

4. Any assistance desired in conducting this search will be furnished by this command.

/signed/
(Signature)

Duane C. Buchholz, LCDR
(Typed Name and Rank)