## UNITED STATES

v.

**Jeffrey Brian MOYKKYNEN, 369 48 1741, Aviation Jet Mechanic Airman Apprentice (E–2), U. S. Navy.**

### NCM 76 0619.

U. S. Navy Court of Military Review.

Sentence Adjudged 31 July 1975.

Decided 23 July 1976.

LT H. Glenn Scammel, JAGC, USNR, Appellate Defense Counsel.

LT Michael C. Farrow, JAGC, USNR, Appellate Government Counsel.

Before NEWTON, Senior Judge, and WRAY and FULTON, JJ.

NEWTON, Senior Judge:

Appellant is convicted by special court-martial military judge of unlawful possession of government property, theft of government property and possession of marijuana, in violation of Articles 92, 121 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 921 and 934.

His sentence as approved prior hereto includes a bad conduct discharge, 75 days confinement, forfeiture of $225.00 pay each month for 3 months and reduction to pay grade E–1.

Appellant assigns the following errors in this criminal proceeding:

I. THE EVIDENCE UPON WHICH A DETERMINATION OF PROBABLE CAUSE TO SEARCH WAS MADE WAS OBTAINED BY ENTRY OF PETTY OFFICERS S & G INTO APPELLANT'S ROOM IN AN UNREASONABLE INVASION OF APPELLANT'S PRIVACY.

II. THE MARIJUANA OBTAINED BY PETTY OFFICER G WAS SURRENDERED BY APPELLANT IN RESPONSE TO AN UNWARNED INTERROGATION IN VIOLATION OF ARTICLE 31, UCMJ.

III. EVIDENCE IN THE RECORD WAS INSUFFICIENT TO ESTABLISH BEYOND REASONABLE DOUBT THAT APPELLANT WAS IN UNEXPLAINED AND EXCLUSIVE POSSESSION OF RECENTLY STOLEN GOODS.

Analysis of the facts in the record discloses that appellant was not keeping his assigned room in enlisted quarters in a clean and orderly condition. In fact, his lack of compliance with required orderliness and cleanliness in his assigned room was well known to Petty Officer S. Consequently, frequent, even daily, inspections of appellant's room were made by S.

S was charged with overall management of the enlisted quarters and responsibility for cleanliness and material condition of those quarters, as the Bachelor Enlisted Quarters (BEQ) Manager. If unclean or disorderly conditions in any of the rooms in the BEQ was severe, S called his superior—in this case Petty Officer G—to accompany him to the room, observe its condition and report the unsatisfactory performance by the room occupant.

Informal inspections by the BEQ Manager were required, by applicable station regulations, each Wednesday. Due to the general lack of quarters cleanliness, the BEQ Officer in overall charge of station quarters had expanded the inspection to daily random-type inspections with the blessings of the command executive officer. In no event were the informal inspections to be searches. Habitability, that is cleanliness, upkeep, safety and proper storage, was the purpose of the inspection. *E. g.* prevention of storage of: inflammables, such as gasoline; health hazards, such as insect breeding material; and irish pennants, in the rooms.

On Wednesday 26 March 1975, at about 0800, S opened the door and looked in appellant's room, which was unoccupied. He observed it to be in an unsatisfactory condition. S called G and they returned to the room later in the morning. They knocked on the closed door and paused briefly. Receiving no response, S unlocked the door and opened it. Thereupon G saw appellant holding a clear plastic bag of marijuana and some Zig Zag cigarette papers—"reefer rollers"—in his hands. Appellant then made an effort to hide the contraband material. G had previous experience and training in detecting and recognizing mari-

juana. He was competent to conclude appellant was in possession of that substance at the time. G took the marijuana from appellant's hand, apprehended him and took him to the station security office. G observed the room at the time to be a shambles with gear everywhere and the bunk unmade—trashy, dirty decks and clothing adrift.

Thereafter, a search authorization for appellant's room was obtained. A subsequent search of the room provided the marijuana appellant is charged with possessing, and the medical equipment appellant is charged with unlawfully possessing and, in part, stealing.

Assignments of Error II and III are considered to be without merit.

■ The evidence of record proves that Petty Officer G seized contraband material because it was in plain view. See additional discussion, infra. No Article 31, UCMJ warning was required, since there was no "testimonial" act by appellant.

■ The evidence is also sufficient to prove beyond reasonable doubt that appellant stole and unlawfully possessed certain medical equipment. Appellant was shown to have had access to the equipment where it was stored and to have had exclusive possession of part of it when his room was later searched. About one month or less elapsed between the last sighting of the equipment in its proper location and the time it was discovered in appellant's room. Appellant's explanation as to his possession of the medical equipment was woefully inadequate to overcome the proof of his guilt. *United States v. Hairston*, 9 U.S.C.M.A. 554, 26 C.M.R. 334 (1958).

■ The basic issue in this case is whether or not the evidence on which the charges are founded was wrongfully seized, as a result of a search predicated on the previous seizure of a bag of marijuana by G. The validity of the command search and subsequent seizure of the last found marijuana and medical equipment turns of the lawfulness of the entry into appellant's room by Petty Officers S and G. If the entry of S and G into appellant's room was unreasonable the entire case against appellant must fall. If not, appellant's conviction may be upheld.

The question, then, is whether Petty Officers S and G unlawfully violated appellant's reasonable expectation to privacy, behind the locked door of his room. We think not.

The purpose of the entry into appellant's room by S and G was not to search for contraband—it was only to inspect and ascertain the state of cleanliness of the room, and to ascertain whether or not safety hazards existed therein. The entire thrust of the inspection was to ensure habitable living quarters. It was totally administrative in nature. That S had previously entered the room on the same day is of no concern inasmuch as the later entry by S and G was for the same purpose as S's previous entry—a habitability inspection.

S and G were authorized to enter and were properly in appellant's room. Their right of access to appellant's room derives from authorization from the commanding officer to inspect the rooms for cleanliness, orderliness, sanitation and material condition (AE 5; R. 6–38)—responsibilities assigned to BEQ managers. The authority to intrude into living quarters for the noted purposes springs from the commanding officer's overall responsibility for the welfare and readiness of his command. One need spend little time in military service to appreciate the necessity for inspections regarding cleanliness and habitability of living quarters. Frequently, a few individuals in any command may be found who through their personal habits make life unpleasant and even dangerous for the majority, by slovenliness and disregard of ordinary safety and health practices. Those persons may be avoided in a civilian community. Avoidance of association with them in a military community is not feasible. Consequently, administrative inspections to prevent unsavory conditions from existing are mandatory, if a command is to meet its mission responsibilities. There is a direct and palpable link between optimum command capability and personnel morale and welfare.

Such governmental intrusion is justified. *United States v. Smith*, 48 C.M.R. 155 (A.C. M.R.1973), *pet. den.*, 23 U.S.C.M.A. 601, 48 C.M.R. 1000 (1974), and cases cited therein; U. S. Navy Regulations, 1973, Article 1102; OPNAV Instruction 11012.2C of 29 December 1971. *See United States v. King*, 2 M.J. 4 (U.S.C.M.A.1976); *United States v. Thomas*, 1 M.J. 397 (U.S.C.M.A.1976); *United States v. Miller*, 1 M.J. 367 (U.S. C.M.A.1976); *United States v. Torres*, 22 U.S.C.M.A. 96, 46 C.M.R. 96 (1973).

The actions of S and G, when entering the room, showed reasonable regard for the privacy of the room occupant. There was no undue harassment. There was no intent to search. S and G knocked prior to entering the room. There was no response to their knock. The entry was accomplished no earlier than mid-morning on a Wednesday. Appellant knew that S had a master key to his room, that S had entered the room by use of the key before, and that room inspections were a frequent occurrence.

Upon observing marijuana in appellant's possession and appellant's attempts to hide the marijuana, that marijuana was lawfully seized. The exigency of the situation required seizure to prevent disposal of the marijuana. It was seized in appellant's personal possession concomitant with appellant's lawful apprehension. The marijuana was seized because it was seen. The discovery of the marijuana was totally inadvertent and unanticipated. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); 39 L.Ed.2d 1067, Annotation, Search and Seizure: Observation of Objects in Plain View—Supreme Court Cases; *United States v. Whitenead*, 48 C.M.R. 344 (N.C.M.R.1973).

In view of the foregoing matter it is concluded that appellant had no reasonable expectation to total freedom from governmental intrusion designed to ensure the habitability, cleanliness and safety of his enlisted living quarters. The entry of S and G into the room was authorized, reasonable and lawful under the facts and circumstances of this case. The seizure of the bag of marijuana seen in appellant's possession was appropriate, warranted and within the law. The subsequent search of appellant's room was based on probable cause.

Accordingly, the findings and sentence as approved prior hereto are affirmed.

Judge FULTON concurs.

WRAY, Judge (concurring in the result):

At about 0800 on Wednesday, 26 March 1976, MS2 Spears, the manager of Bachelor Enlisted Quarters (BEQ) Barracks 205 at the Naval Air Station, Meridian, Mississippi, conducted an inspection of the orderliness and cleanliness of a number of the barracks' rooms. Among the rooms he inspected was Room 9, the room to which appellant was assigned. Spears' inspection of Room 9 was brief and no other person was then present in the room.

During frequent earlier inspections of Room 9 Spears had continually found it to be in an untidy and unclean condition. On 26 March Spears again found Room 9 to be in an unsatisfactory condition. Two other rooms were also in an unsatisfactory condition and Spears therefore telephoned BM1 Gilbert, the assistant manager of the BEQ Complex and asked Gilbert to verify the unsatisfactory condition of each of the three rooms.

Upon verification of the unsatisfactory condition of a particular room Gilbert would contact the appropriate military superior of the sailors living there for assistance in correcting the room's condition.

Not much later in the morning, after Spears had called Gilbert, they approached appellant's room. Both Spears and Gilbert testified that no response was received after knocking on the door; appellant denied hearing any knock.

Spears, using his master key, unlocked appellant's door and he and Gilbert entered Room 9.

Gilbert testified that as he entered Room 9 appellant was on the other side of the room, some 12 to 14 feet away, standing next to a window by a dresser with a package of cigarette papers in one hand and a plastic bag containing what appeared to be marihuana in the other hand. Gilbert said appellant was in the process of rolling a marihuana cigarette and before he crossed the room to appellant, appellant had placed the package of cigarette papers in a container and was attempting to conceal the bag of marihuana behind his back.

After Gilbert completed crossing the room he demanded that appellant surrender the bag of marihuana to him without warning appellant of any rights. According to Gilbert, appellant refused to deliver the bag to him and Gilbert then took the bag from appellant's hand and apprehended appellant.

The testimony of appellant germane to the circumstances surrounding the entry of Spears and Gilbert into his room confirmed the absence of an Article 31(b), UCMJ, warning before Gilbert demanded the bag of marihuana. Pursuant to Gilbert's demand appellant stated that he involuntarily surrendered the bag and that Gilbert did not take it from him.

Appellant reported during his testimony that he was first alerted to someone outside his door when he heard the key in the lock. He then did what he could to conceal the cigarette papers and bag of marihuana which he had recently exposed on the top of his dresser for the purpose of making a cigarette. According to appellant, before the door opened he placed the package of cigarette papers in a container and replaced its lid. As the door opened he said he was then attempting to hide the bag of marihuana from sight. Appellant indicated he would have achieved success in hiding the bag of marihuana if he had ". . . had two more seconds. . . ." and acknowledged, moreover, that it was not impossible for Gilbert to have seen the bag of marihuana as he, appellant, took it from the top of the dresser, clenched it in his hand and moved his hand down to his side.

Notwithstanding the differences between the testimony of appellant and Gilbert, and although Spears, involved in removing the key from the lock as Gilbert entered the room, did not corroborate the immediate observations of Gilbert,[1] I am satisfied that Gilbert saw appellant in manual possession of cigarette papers and also the plastic bag which he believed contained marihuana and that Gilbert's testimonial conclusion that appellant had been about to roll a marihuana cigarette was not inaccurate.

Gilbert, therefore, on reasonable grounds, believed a crime was then being committed in his presence, i. e., appellant's wrongful possession of marihuana. Armed with such a belief Gilbert had the power to apprehend appellant and obtain the contraband bag of marihuana, without warning appellant of any rights. *Compare United States v. Ness*, 13 U.S.C.M.A. 18, 32 C.M.R. 18 (1962).

Gilbert could have demanded, requested, or, using reasonable force, taken the bag of marihuana from appellant.

The choice of how Gilbert obtained the bag from appellant was Gilbert's and even assuming that appellant, as he testified, involuntarily surrendered the marihuana to Gilbert, the absence of an Article 31(b) warning did not constitute a violation of any right of appellant.

Gilbert had the power and the duty under the circumstances to obtain the marihuana from appellant and appellant can make no valid complaint because Gilbert, according to appellant, successfully obtained the marihuana from appellant by using the nonviolent means of orally directing appellant to surrender the bag of marihuana instead of employing physical force to remove the bag from appellant's wrongful possession.

After Gilbert obtained the bag of marihuana he took possession of the container of cigarette papers and brought appellant to the security office at the Air Station. Gilbert turned the bag of marihuana and the container of cigarette papers over to a pet-

---

1. Spears testimony did, however, support much of what Gilbert said occurred.

ty officer on duty at the security office and he and Spears made written statements. Appellant was advised of his rights and pursuant to his request he was provided the services of a military lawyer.[2]

Based upon information provided by Gilbert and Spears a search warrant for appellant's room was issued by an officer with the authority to authorize searches. The warrant was shown to appellant's lawyer before it was executed and some erroneous information was noted in it. A second warrant was issued and later in the morning of 26 March 1975 a search of appellant's room resulted in the discovery of the real evidence introduced during appellant's trial in support of the charges of which appellant was convicted.

The matter found in appellant's room as a result of the search was admissible in evidence against him at his trial only if: the entry into his room by Gilbert and Spears was lawful; and the information given by Gilbert and Spears with respect to appellant's activity in manually possessing a bag of marihuana and cigarette papers could be used as the probable cause basis, necessary before a search of appellant's room was permissible.

As the principal opinion indicates, an inspection of appellant's room was required on 26 March 1975 by an Air Station instruction. When Spears found appellant's room to be in an unsatisfactory condition his subsequent reentry into the room with Gilbert was not made with a view toward discovering contraband or other evidence to be used in the prosecution of a criminal action against appellant. The limited and legitimate purpose for which Spears and Gilbert entered appellant's room was for Gilbert to verify by inspection its unsatisfactory condition so that action could be taken to correct that condition, a purpose that was totally reasonable.

I have no doubt that prior to Spears and Gilbert entering appellant's room they had paused briefly after knocking on the door before Spears unlocked and opened it. Moreover, I do not believe appellant's testimony that he heard no knock. I am certain that he heard the knock and did not respond to it in order to gain as much time as possible to hide the component parts of the marihuana cigarette manufacturing operation he had commenced on top of his dresser. By his own estimate his timing lacked two seconds for successful concealment of all evidence of his unlawful operation.

Knocking on the door of a BEQ room by a room inspector is a common courtesy. It reflects a recognition of the individual dignity of anyone who may be inside the room. The knock not only gives some meaning to the fact that the room has a door that may be locked from the inside, but of even greater significance, the use of a knock reflects a greater degree or privacy accorded room occupants and enhances the privacy perceptively enjoyed by individuals residing in the BEQ.

But, in the instant case, even if there had been no knock on appellant's door, an unannounced entry into appellant's room by Spears and Gilbert during the normal working day for the limited objective of Gilbert verifying its unsatisfactory condition so that corrective action could be taken would not have been unlawful or a violation of any right of appellant to privacy.

As Spears and Gilbert were about to enter appellant's room, appellant's presence was totally unforeseen. No less unexpected was the discovery of appellant's activity in connection with his possession of cigarette papers and a bag of apparent marihuana.

Spears and Gilbert were engaged in no ruse in entering appellant's room. They were not desirous of finding criminal activity and its discovery was wholly unanticipated.

Under these circumstances I conclude that the information given by Gilbert and Spears concerning appellant's activity in his room was information lawfully obtained

---

**2.** This same military lawyer continued to represent appellant up to, during, and after appellant's trial.

984

and its use as the probable cause basis for the subsequent authorized search of appellant's room was also lawful. Moreover, I also conclude that the real evidence found during the course of the search of appellant's room which supports the charges was admissible in evidence against him at his trial. *Compare Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974), *and Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), *with United States v. Thomas*, No. 29,934, 1 M.J. 397 (U.S.C.M.A. 23 April 1976), *and Committee for G. I. Rights v. Callaway*, 171 U.S.App. D.C. 73, 518 F.2d 466 (1975).

I find that the legal and competent evidence of record on the merits and its reasonable inferences convincingly establishes appellant's guilt of the charges of which he stands convicted beyond reasonable doubt, without shifting any burden to appellant for him to prove his innocence.

Accordingly, I arrive at the same ultimate result with respect to the findings concerning the charges and the sentence as the majority. I therefore join with them in affirming the findings of guilty and the sentence as approved on review below.