**UNITED STATES**

v.

**Lionel A. MARTIN, 135 48 7723, Staff Sergeant (E–6), U. S. Marine Corps.**

**NCM 76 2362.**

U. S. Navy Court of Military Review.

7 June 1977.

CAPT Jay C. Keithley, USMC, Appellant Defense Counsel.

LT Michael C. Farrow, JAGC, USNR, Appellate Government Counsel.

Before NEWTON, DUNBAR and GLADIS, JJ.

GLADIS, Judge:

This is a companion case to *United States v. McCorn*, No. 76 1872 (N.C.M.R. 23 March 1977). Appellant was convicted contrary to his pleas at a general court-martial bench trial of wrongful possession of unregistered firearms and 30 pounds of marijuana in Government quarters and unlawful concealment of stolen property in violation of Articles 92 and 134, UCMJ, 10 U.S.C. §§ 892, 934, and sentenced to a bad conduct discharge and reduction to pay grade E–1.[1] The convening authority disapproved the findings as to the firearms and stolen property offenses and upon reassessment approved the sentence without change.

Appellate defense counsel contends that appellant's conviction is the product of an unlawful search, that the evidence is insufficient to establish guilt, and that the sentence is inappropriately severe. Before considering these assignments of error we shall address the jurisdictional issue raised by appellant at trial and in his request for appellate representation.

We find no prejudice and affirm.

## JURISDICTION

■ At trial appellant contended that the court-martial lacked jurisdiction because the offenses charged were not service-connected within the meaning of *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969). Appellant's alleged criminal conduct occurred in Government quarters assigned to him in Slocum Village, a Marine Corps housing area for married enlisted personnel at Marine Corps Air Station, Cherry Point, North Carolina.[2] The housing area is separated from the main air station by a creek and access is normally obtained from a state highway. Signs posted at the entrances restrict access to residents and guests. The Slocum Village housing is controlled by the Marine Corps and operated in accordance with the Marine Corps Family Housing Management Manual, MCO P11101.59. The Marine Corps provides fire fighting services and maintains the streets.

A careful balancing of the jurisdictional criteria enunciated in *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), reveals court-martial jurisdiction. At the very least appellant possessed 30 pounds of marijuana in his Marine Corps quarters in order to aid his associates, who knew they were under surveillance, in their efforts to avoid apprehension and seizure. (R. 420, 428). He knew that they were marijuana dealers and the marijuana was to be distributed. (R. 395, 399, 400, 422, 429). The offense occurred at a place under military control. However, it is unnecessary to balance the *Relford* criteria in order to determine the jurisdictional issue in this case. If an offense is committed within or at the geographical boundary of a military post and violates the security of the post, the offense is *ipso facto* triable by court-martial and a detailed analysis of jurisdictional factors to determine service-connection is unnecessary. *See Relford v. Commandant, supra; United States v. Moore*, 24 U.S.C.M.A. 293, 52 C.M.R. 4, 1 M.J. 448 (1976).

■ At trial appellant argued that the offenses charged were not subject to military jurisdiction because they occurred on land over which the United States had not accepted jurisdiction.[3] *See* 40 U.S.C. § 255.

---

1. Appellant was acquitted of charges alleging conspiracies to possess and sell marijuana and sale and transfer of marijuana. The military judge dismissed charges alleging conspiracy to introduce and wrongful introduction of marijuana into a Government housing area, and wrongful possession of a hypodermic syringe and needle.

2. Some civilian employees of the Marine Corps are also assigned to Government quarters in the area.

3. The case was tried before *United States v. McCarthy*, 25 U.S.C.M.A. 30, 54 C.M.R. 30, 2 M.J. 26 (1976), was decided by the Court of Military Appeals. The military judge dis-

The United States had acquired proprietary jurisdiction giving it absolute possession, custody, and control of the area by condemnation proceedings. However, exclusive, partial, or concurrent federal legislative jurisdiction was not acquired because notice of acceptance of jurisdiction was not given. 40 U.S.C. § 255; *Adams v. United States*, 319 U.S. 312, 63 S.Ct. 1122, 87 L.Ed. 1421 (1943); *State v. Burell*, 256 N.C.2d 288, 123 S.E.2d 795 (1962), *cert. den.* 370 U.S. 961, 82 S.Ct. 1621, 8 L.Ed.2d 827 (1962). *See generally*, Papcun, *Proprietary Jurisdiction*, 13 AF JAG L.Rev. 116 (1971); Boston, *Jurisdiction and Related Problems at a New Naval Air Station*, 18 JAG J. 235 (1964).

The issue is whether a military installation or portions thereof over which the Federal Government exercises no more than proprietary jurisdiction are a post or portions of a post within the meaning of *Relford v. Commandant, supra*, and whether offenses committed there are, *ipso facto*, service-connected.

Proprietary jurisdiction covers those instances in which the Federal Government has acquired some degree of ownership to a land area in a State but has not obtained any measure of the State's legislative authority over the area. Papcun, *supra*, citing Attorney Gen., *Report of Interdepartmental Committee for the Study of Jurisdiction Over Federal Areas Within the States*, p. 11 (Part II, 1957). By virtue of its functions and powers under various provisions of the Constitution, however, the Federal Government has many powers and immunities with respect to its operations in areas in which it acquires only proprietary jurisdiction. A State may not interfere with federal operations. Boston, *supra*, n. 1. On 95% of the land the Federal Government owns, it has not obtained any measure of the State's legislative authority and exercises only proprietary jurisdiction. The preponderance of military reservation land is under proprietary jurisdiction.[4] Papcun, *supra*, p. 117 citing General Services Administration, *Inventory Report on Jurisdictional Status of Federal Areas Within the States as of June 30, 1957* (1957).

The piecemeal method by which military reservations were acquired makes it rather common for almost every military reservation to have some proprietary jurisdiction land within its limits. Papcun, *supra*, p. 117.

We conclude that a military installation is a post or enclave within the meaning of *Relford v. Commandant, supra*, and offenses committed there are service-connected even though the Federal Government has acquired no more than a proprietary interest therein. *United States v. Fuller*, 54 C.M.R. 460, 2 M.J. 702 (A.F.C.M.R.1976). Carving out a more workable standard for resolution of the issue and holding that offenses within the geographical boundary of a military post are service-connected, the Supreme Court in *Relford* noted its inability appropriately and meaningfully to draw any line between a post's strictly military

missed specifications alleging conspiracy to introduce and wrongful introduction of marijuana into a Government housing area in violation of Article 1151, U.S. Navy Regulations, 1973, and a specification alleging wrongful possession of a hypodermic syringe and needle in violation of a North Carolina statute. Among other things, Article 1151 prohibits introduction of marijuana or other controlled substances within any place under the jurisdiction of the Department of the Navy. The judge found that the area was not a place under the jurisdiction of the Navy Department within the meaning of Navy Regulations. He also found that the violations of the North Carolina statute could not be prosecuted under the Federal Assimilated Crimes Act (18 U.S.C. § 13) because of the absence of Federal criminal jurisdiction. The sole remaining offense is possession of marijuana in violation of Article 1151. Although possession by a member of the Naval service anywhere is also proscribed by that article this is not determinative of the jurisdiction issue. Existence of a general regulation declaring specified conduct as punishable does not, standing alone, confer jurisdiction on a court-martial. The conduct proscribed must be service-connected. *United States v. Castro*, 18 U.S.C.M.A. 598, 40 C.M.R. 310 (1969).

4. The Navy Department policy is to acquire exclusive jurisdiction over Federal property only when acquisition is considered essential to the performance of military functions, missions, and tasks on the property. Boston, *supra*, p. 237.

and nonmilitary areas or between a service-man-defendant's on-duty and off-duty activities and hours on the post in resolving the jurisdictional issue. The Court did not attempt to distinguish between base housing and barracks, flight line and bowling alley, or mess hall and club or post exchange. We fail to see how a distinction relevant to court-martial jurisdiction can be made between those areas of a military installation over which the Federal Government exercises exclusive or partial federal legislative jurisdiction and those over which it merely exercises proprietary jurisdiction. The Federal Government may exercise exclusive jurisdiction over housing and recreational areas at some bases and only proprietary jurisdiction over operational centers at others. The Government exercises only proprietary jurisdiction over a portion of the runways at the Cherry Point Air Station. As noted above, in some instances the Government exercises only proprietary jurisdiction over an entire military installation. *See* Boston, *supra*. The threat posed to the security of the installation by an offense committed by a serviceman does not vary with the nature of the federal legislative jurisdiction exercised there. If the Federal Government has exclusive legislative jurisdiction the offense is triable in a Federal civilian court. If the Federal Government has only proprietary jurisdiction the offense is triable in a State court. However, under the rationale enunciated by the Supreme Court in *Relford* in carving out a more workable standard for determining whether court-martial jurisdiction exists, the offense committed on the military installation is service-connected. The threat to the military installation engenders a pervasive military interest and court-martial jurisdiction.

The Slocum Village housing area is part of the military installation at the Marine Corps Air Station, Cherry Point, North Carolina.[5] Accordingly, the offense of which appellant was convicted was service-con-

nected within the meaning of *O'Callahan v. Parker, supra*, and triable by court-martial.

## II

## SEARCH AND SEIZURE

### A. *Background*

Appellant challenges the searches which resulted in seizure of the 30 pounds of marijuana he stands convicted of possessing. He contended at trial that the Commanding Officer of the Air Station lacked jurisdiction to authorize a search in the housing area because the Federal Government had never accepted criminal jurisdiction there, that the officer who authorized the searches was not impartial, and that probable cause to search did not exist. The facts are as follows.

Staff Sergeant Vaughn, a CID investigator, telephoned Colonel Wallace, the Station Inspector and acting Chief of Staff on the afternoon of 7 February 1976, and requested permission to search Corporal McCorn's automobile and appellant's quarters. Vaughn furnished the following information to Colonel Wallace. McCorn had a record of selling marijuana and had made three sales to confidential informants. These three informants were reliable. On the previous evening McCorn told one of these informants that the next day a UA Marine named Chapman was bringing a large quantity of marijuana, 50 or 80 pounds, into the area and McCorn would participate in the distribution and cutting up of the marijuana at another person's house, and he, McCorn, would bring a pound of marijuana to the informant's house on the afternoon of 7 February. This informant had given reliable information in the past. Vaughn had placed McCorn's quarters under surveillance at 1145, 7 February. Appellant and a civilian fitting the description of Chapman came to McCorn's quarters. They departed with McCorn and went to appellant's quarters. McCorn and

---

5. We attribute no significance to the separation of the housing area from the main air station by a creek. Naval installations are commonly divided by bodies of water. Military posts are often severed by public highways and portions may be open to the general public. *See Greer v. Spock*, 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976).

the civilian went to the airport, and returned to appellant's quarters. McCorn departed carrying a large brown paper sack and went to a motel in Havelock. After a short time he left the motel without the sack and returned to appellant's quarters. He departed carrying a large suitcase which he placed in the back of his car. CID agents stopped McCorn and apprehended him for sale of marijuana. They detected the odor of marijuana on his clothing and in his car. Telling Colonel Wallace that he believed there was marijuana in the suitcase and a larger quantity of the marijuana brought into the area by Chapman in appellant's quarters, Vaughn requested permission to search McCorn's car and, if he found a large quantity of marijuana there, permission to search appellant's quarters. As station inspector, Colonel Wallace had reviewed CID reports and was aware of the three sales by McCorn about which Vaughn spoke. He had considered evicting McCorn from base quarters but took no action in order to avoid disturbing the open CID case. Colonel Wallace granted Vaughn's request for authorization to search. Ten large plastic bags of marijuana believed to contain one pound each were found in the suitcase.[6] The CID agents proceeded to appellant's quarters. The agents smelled marijuana. Staff Sergeant Vaughn knocked on the front door. When appellant opened it, Vaughn saw several large plastic bags of what looked like marijuana and a scale on the table. Chapman was cutting a brick with a knife. Seventeen pounds of marijuana were found in appellant's quarters. Local police obtained a warrant from a North Carolina magistrate, searched the motel apartment at which McCorn had left the large paper sack, and discovered six pounds of marijuana. Two Marines and two civilian dependents were in the apartment.

### B. *Jurisdiction*

■ At the outset, we reject the position urged at trial by appellant that there was no military jurisdiction to search his quarters because the Marine Corps exercised only proprietary jurisdiction over the housing area. If a commanding officer did not have authority to order a search upon a showing of probable cause of an area of the military post over which the Federal Government exercised only a proprietary interest, barracks and operational areas on bases in which only proprietary jurisdiction had been acquired could not be searched without warrants from State magistrates. This is not the law. In prescribing modes of proof in cases before courts-martial, MCM, 1969 (Rev.), para. 152 provides that the fruits of a search authorized upon probable cause by a commanding officer of property situated in a military installation or some other place under military control are admissible. *See also* U. S. Navy Regulations, 1973, Article 0702; *Cafeteria Workers v. McElroy*, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961).

### C. *Neutrality of Officer Authorizing Search*

■ Whether an authorization to search is made by a commanding officer or his delegate, the act of authorizing a search on the basis of probable cause is a judicial function. A commanding officer stands in the same position as a federal magistrate issuing a search warrant. Consequently, the military officer's decision to authorize a search on probable cause must be made with a magistrate's neutrality and detachment. The search authority must be exercised with a judicial rather than a police attitude. *United States v. Staggs*, 23 U.S. C.M.A. 111, 48 C.M.R. 672 (1974), citing *United States v. Drew*, 15 U.S.C.M.A. 449, 35 C.M.R. 421 (1965), and *United States v. Sam*, 22 U.S.C.M.A. 124, 46 C.M.R. 124 (1973). *See Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Connally v. Georgia*, 429 U.S. 245, 97 S.Ct. 546, 50 L.Ed.2d 444 (1977).

■ Appellant argues that Colonel Wallace, the acting chief of staff who authorized the search in the absence of the commanding general and the chief of staff,

---

**6.** The bags actually contained 7¾ pounds of marijuana.

lacked the requisite neutrality and detachment to authorize a valid search. A commanding officer with responsibility for the maintenance of order and discipline is not *per se* disqualified from authorizing searches upon probable cause. *United States v. Staggs, supra.* Standing alone and in the performance of official duties, the prior knowledge of, or even ordering of, an investigation into the suspected criminal activity by an accused does not amount to such participation in the process of investigation which would divest the authorizing officer of his lawful authority to order a search upon probable cause. *United States v. Guerette*, 23 U.S.C.M.A. 281, 49 C.M.R. 530 (1975); *United States v. Bradley*, 50 C.M.R. 608 (N.C.M.R.1975), *pet. den.*, No. 30,242 (U.S.C.M.A. 20 June 1975). Although as station inspector Colonel Wallace had a general interest in everything on the station including law enforcement activities, he was not a law enforcement officer. The record does not support appellant's contention that Colonel Wallace became an active participant in CID efforts to perfect a case against Corporal McCorn. Colonel Wallace did not abandon his impartiality and was not disqualified from authorizing the search.

### D. *Probable Cause*

In a supplemental assignment of error appellant argues that the testimony demonstrates that the officer authorizing the search was not provided adequate information to provide the basis for an independent evaluation of the reliability of the informant and that he relied wholly upon the representations of the officer seeking authorization to search.

 Probable cause for ordering a search exists when there are reasonable grounds to believe that items which are properly the subject of a search are located in the place to be searched. Such a reasonable belief may be based on information which the authority requesting permission to search has received from another if the authority ordering the search has been apprised of some of the underlying circumstances from which the informant concluded that the items in question were where he claimed they were and of some of the underlying circumstances from which the authority requesting permission to search concluded that the informant was credible or his information reliable. *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); MCM, 1969 (Rev.), para. 152.

 The two-pronged *Aguilar* test is designed to establish the trustworthiness of the information and the truthfulness of the informant. *United States v. Bradley, supra*, at 614. To support the probable cause for a search based on information supplied by an informant, the person authorizing the search must be satisfied as to the honesty (*i. e.*, is he to be believed) of the informant and the trustworthiness of his information (*i. e.*, did the informant obtain his information in a reliable manner). The honesty of the informant may be determined in one of two ways; is the informant credible or is the informant's information reliable. *United States v. Buchanan*, 49 C.M.R. 620 (A.C.M.R.1974), *pet. den.*, 50 C.M.R. 903 (U.S.C.M.A.1975).

The reliability of an informant's report may be established by independent investigation or corroborated by other facts.[7] *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *United States v. Bunch*, 19 U.S.C.M.A. 309, 41 C.M.R. 309 (1970). *See Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *United States v. McFarland*, 19 U.S.C.M.A. 356, 41 C.M.R. 356 (1970).

 In determining whether the requirements of *Aguilar* have been met, courts must not become hypertechnical. *United States v. Scarborough*, 23 U.S.C. M.A. 51, 48 C.M.R. 522 (1974), citing *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). In dealing

---

7. Totally innocuous matters may corroborate an informant's report. *Jones v. United States*, 362 U.S. 257, 269, 270, 80 S.Ct. 725, 4 L.Ed.2d 697 (1967); *United States v. Tuley*, 546 F.2d 1264 (5th Cir. 1977).

with probable cause we deal with probabilities. These are not technical; they are factual and practical considerations on which reasonable and prudent men, not legal technicians, act. *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). Where a search is authorized by a magistrate or the equivalent, his determination will be sustained if there is a substantial basis for him to conclude that narcotics were probably present at the premises to be searched.

The officer authorizing the search must have knowledge of facts sufficient to show probable cause when he authorizes the search. *United States v. Martinez*, 16 U.S. C.M.A. 40, 36 C.M.R. 196 (1966). The authorizing official cannot rest on an unexplained conclusion of even the person seeking the authority. *United States v. Lidle*, 21 U.S.C.M.A. 455, 45 C.M.R. 229 (1972). In determining whether there is probable cause, a court may consider all of the information supplied to and known by the authorizing officer. *United States v. Philpot*, 47 C.M.R. 705 (A.F.C.M.R.1973). *See United States v. Clifford*, 19 U.S.C.M.A. 391, 41 C.M.R. 391 (1970). The information must show facts, not conclusions, that establish probable cause to search. However, the information is not intended to establish the existence of guilt either *prima facie* or beyond a reasonable doubt, but only to establish that the probabilities weigh in the Government's favor and thus justify the invasion of privacy. *United States v. Scarborough, supra.*

Probable cause cannot be made out when the officer authorizing the search is merely provided with the requestor's conclusions, stating only his or the informant's belief that probable cause exists without detailing any of the underlying circumstances upon which that belief is based. *United States v. Ventresca, supra*, 380 U.S. at 109, 85 S.Ct. 741. The officer authorizing a search must have sufficient information to support an independent conclusion that probable cause exists. *See Whiteley v. Warden*, 401 U.S. 560, 564, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1970). He cannot rely on the requestor's conclusions but must make an independent evaluation of the evidence. *United States v. Houston*, 23 U.S.C.M.A. 200, 48 C.M.R. 952 (1974).

The question is not whether a better showing of probable cause could have been made but whether one in fact was made. *United States v. Bradley, supra.* In this case the information provided to the officer authorizing the searches was sufficient to apprise him of the underlying circumstances on which the informant based his information and of the reliability of the information provided by him, thus furnishing a substantial basis for crediting his report. The following facts known to the officer authorizing the search establish probable cause.

1. On the previous evening McCorn told an informant that on the following day a UA Marine named Chapman was bringing a large quantity of marijuana, 50 or 80 pounds, into the area and McCorn would participate in the distribution and cutting up of the marijuana at another person's house. .

2. The informant's report was based on personal knowledge. Information provided by an eyewitness is considered reliable. *United States v. Dingwell*, 51 C.M.R. 99, 1 M.J. 594 (A.C.M.R.1975); *United States v. Bradley, supra. See United States v. Harris, supra. Cf. United States v. Gamboa*, 23 U.S.C.M.A. 83, 48 C.M.R. 541 (1974). The information was relatively detailed and specific.

3. The informant to whom McCorn revealed the above information had previously furnished information which led to a conviction. (R. 148). Such information corroborates reliability. *See Jones v. United States, supra*, 362 U.S. at 271, 80 S.Ct. 725.

4. The officer authorizing the search was aware of McCorn's reputation for selling marijuana. Such information corroborates reliability. *See United States v. Harris, supra; United States v. Gamboa, supra.*

5. During the surveillance of McCorn's quarters on the following day appellant and a man fitting the description of Chapman

came to McCorn's quarters. They departed with McCorn and went to appellant's quarters. McCorn delivered a large paper sack to a motel. He returned to appellant's quarters and departed with a large suitcase which he placed in the trunk of his car. McCorn was stopped by CID agents who smelled marijuana in the car. The reliability of an informant's report may be corroborated by other facts. *United States v. Harris, supra, Jones v. United States, supra.* Facts personally observed by the requestor and his fellow Government agents engaged in a common investigation and conveyed to the officer authorizing the search may provide a reliable basis for authorization to search. *See United States v. Ventresca, supra,* 380 U.S. at 111, 85 S.Ct. 741.

██ While these facts considered alone might not be a sufficient basis for probable cause, consideration of their combined cumulative effect by the officer authorizing the search was sufficient to establish probable cause. The totality of the information known to the officer authorizing the search establishes probable cause. Authorization to search appellant's quarters conditioned upon the finding of a large amount of marijuana in McCorn's auto was proper under the circumstances. *See United States v. Ness,* 13 U.S.C.M.A. 18, 23, 32 C.M.R. 18, 23 (1962). We reject appellant's contention that the information known to the officer authorizing the search was insufficient to make an adequate evaluation of reliability. The information known to that officer is sufficient to establish the reliability of the information provided by the informant and thus satisfies the requirement of *Aguilar v. Texas, supra.* We also reject appellant's contention that the officer authorizing the search did not make an adequate independent evaluation of the information but relied solely on the representations of the requestor. Appellant's contention overlooks the important distinction between acceptance of the evidence presented by the requestor and reliance upon the requestor's conclusions alone. *See United States v. Houston, supra.* The officer authorizing the search may accept the facts presented by the requestor. However, he must inde-

pendently weigh the evidence and determine the existence of probable cause. The record reveals that the officer authorizing the search based his authorization on all the facts known to him. (R. 120). He did not rely solely on the conclusions of the requestor. We are satisfied that the authorizor made an adequate independent assessment of the evidence in determining that there was probable cause to search.

## SUFFICIENCY OF EVIDENCE

Appellant contends that the evidence is insufficient to establish his guilt. The defense position is that McCorn and Chapman, not appellant, possessed the marijuana.

██ The issue hinges upon credibility. Recognizing that the trier of fact saw and heard the witnesses, we find that the evidence is sufficient to establish beyond a reasonable doubt that appellant wrongfully exercised the requisite intent to exercise dominion and control over the 30 pounds of marijuana. *See* Judge Bazelon's opinion in *United States v. Davis,* 562 F.2d 681 (D.C. Cir. 6 April 1977). The evidence proves his guilt beyond a reasonable doubt.

## SENTENCE

██ Appellant, a staff sergeant, contends that an unsuspended bad conduct discharge is inappropriate. Appellant's excellent past record notwithstanding, his possession of 30 pounds of marijuana under the precise circumstances of this case can only be characterized as bad conduct. On the basis of the entire record, we find that an unsuspended bad conduct discharge is appropriate in this case.

Accordingly, the findings of guilty and sentence as approved on review below are affirmed. The court-martial order should be corrected to reflect accurately the charges on which the accused was arraigned and their disposition.

Senior Judge NEWTON and Judge DUNBAR concur.